UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LOCKHART, | : | Case No. 1:07CV823 |
| | : | Agency No. A 98-089-150 |
| | : | |
| Petitioner, | : | JUDGE O'MALLEY |
| | : | |
| v. | : | |
| | : | |
| CHERTOFF, Secretary, | : | **OPINION & ORDER** |
| Department of Homeland Security, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

This case is before the Court on Defendants' (the "Government") *Motion to Dismiss Petition for Mandamus Relief* (Doc. 13) and Petitioner Ms. Nelly Supangan Lockhart's ("Ms. Lockhart") *Cross-Motion for Summary Judgment* (Doc. 15). The Government is seeking dismissal of Ms. Lockhart's *Amended Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief* (Doc. 3) ("Complaint"), while Ms. Lockhart's is seeking summary judgment granting the relief requested in the Complaint. The central issue with respect to both motions is whether Ms. Lockhart is entitled to statutory treatment as an "immediate relative" under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.* For the reasons more fully articulated below, Ms. Lockhart falls within the definition of "immediate relative." *See generally Freeman v. Gonzalez*, 444 F.3d 1031 (9th Cir. 2006). Consequently, her *Motion for Summary Judgment* (Doc. 15) is **GRANTED** and the Government's *Motion to Dismiss* (Doc. 13) is **DENIED**.

**I.    BACKGROUND**

   **A.    FACTS**

The relevant facts in this case are undisputed.[1]  Nelly Supangan Lockhart (*nee* Nelly

---

[1]    *See* Complaint at ¶¶ 13 - 34; Motion to Dismiss at pp. 3-4.

Supangan Ando) is a citizen of the Phillippines. Ms. Lockhart was lawfully admitted to the United States on December 15, 2003. On January 20, 2004, she married a United States citizen, Gerald Lockhart. On February 1, 2004, Gerald Lockhart filed a Form I-130 petition with the Cleveland, Ohio Field Office of the U.S. Citizenship and Immigration Services ("USCIS")[2] attesting that Ms. Lockhart was his wife and should be treated as an "immediate relative" under 8 U.S.C. § 1151(b)(2)(A)(i). On the same day that Gerald Lockhart filed the Form I-130 petition, Ms. Lockhart filed a Form I-485 Application to Register Permanent Residence or Adjust Status. "Immediate relative" status is a prerequisite to eligibility for adjustment of status under 8 U.S.C. § 1255(a).

On June 24, 2004, Ms. Lockhart gave birth to a son, Justin Carlyle Lockhart. Gerald Lockhart was listed as Justin's father.

The USCIS proceeded to process the Form I-130 petition and Form I-485 application. The USCIS interviewed Gerald Lockhart and Ms. Lockhart regarding the Form I-130 petition and Form I-485 application in April or May, 2005.[3] Both Gerald Lockhart and Ms. Lockhart gave testimony as to the validity of their marriage at the interview. On April 6, 2005 the USCIS requested additional evidence from Ms. Lockhart. She sent the requested evidence to the USCIS in April, 2005.

---

[2] The USCIS is a federal agency now within the Department of Homeland Security. "On March 1, 2003, service and benefit functions of the U.S. Immigration and Naturalization Service (INS) transitioned into the Department of Homeland Security (DHS) as the U.S. Citizenship and Immigration Services (USCIS). USCIS is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services policies and priorities." *See* "About USCIS," USCIS Web-site, *available at* http://www.uscis.gov/portal/site/uscis (last visited 1/3/08). This opinion uses "USCIS" as the general term for both the INS prior to March 1, 2003 and the current USCIS within the Department of Homeland Security.

[3] The parties' briefs list different dates for the USCIS interview with Mr. and Ms. Lockhart. It is undisputed that the interviews occurred in April or May of 2005, however.

On December 21, 2005, Gerald Lockhart died of a heart attack. At the time of his death, he and Ms. Lockhart had been married for one (1) year and eleven (11) months. On June 27, 2006, the USCIS requested a copy of Gerald Lockhart's death certificate.

The USCIS had not adjudicated the Form I-130 petition or the Form I-485 application at the time of Gerald Lockhart's death. On October 26, 2006, the USCIS denied the Form I-130 petition and the Form I-485 application. The Form I-130 petition was denied solely on the basis that, upon the death of her U.S. citizen husband, Ms. Lockhart was no longer the "spouse" of a U.S. citizen and was not entitled to treatment as an "immediate relative" under 8 U.S.C. § 1151(b)(2)(A)(i). Her Form I-485 application was denied because it was entirely dependant on approval of the Form I-130 petition.

Ms. Lockhart filed a motion to re-open and reconsider the denial of the Form I-130 petition on November 20, 2006. On December 4, 2006, the USCIS denied this motion without explanation.

Ms. Lockhart is currently in removal proceedings before the Cleveland, Ohio Immigration Court.

### B. THE IMMIGRATION AND NATIONALITY ACT

The Immigration and Nationality Act ("INA") regulates the number of immigrant visas that can be issued in a given year. Section 1151(a) generally establishes quotas for the number of immigrants that may be issued a visa from each foreign country in a given year. *See* 8 U.S.C. § 1151(a). Sub-section (b), however, describes categories of aliens who are not subject to the numerical limitations in § 1151(a). *See* 8 U.S.C. § 1151(b). Sub-section (b) was enacted as part of the Immigration Reform Act of 1965 and is intended to ensure that relatives of U.S. citizens and legal aliens are allowed to enter and remain in the United States. *See* S.Rep. No. 748 (1965) *as*

*reprinted in* 1965 U.S.C.C.A.N. 3328, 3329-32. Sub-section (b) therefore defines several categories of aliens, including "immediate relatives," who are not subject to the numerical limitations in the INA. *See* 8 U.S.C. § 1151(b)(2)(A)(i). In pertinent part, 8 U.S.C. § 1151(b)(2)(A)(1) provides:

> **(2)(A)(i) Immediate relatives.**--For purposes of this subsection, the term "immediate relatives" means the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age. In the case of an alien who was the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien (and each child of the alien) shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 1154(a)(1)(A)(ii) of this title within 2 years after such date and only until the date the spouse remarries. . . .

Under the first sentence of § 1151(b)(2)(A)(1), an alien is an "immediate relative" if they are the spouse of a U.S. citizen. After the couple marries, the citizen-spouse may file an alien relative visa petition with the USCIS – USCIS Form I-130. *See* 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R §§ 204.1(a)(1) and 204.2(a). Form I-130 is filed on behalf of the alien-spouse, and the USCIS conducts an investigation of every Form I-130 petition, in part to determine whether the marriage is valid. *See* 8 U.S.C. § 1154(a)-(b).[4] If the USCIS determines that the marriage is not a sham and the alien-spouse is in fact a "spouse," then it *shall* approve the Form I-130 petition. *See* 8 U.S.C. § 1154(b).

Approval of the Form I-130 petition allows the alien/immediate relative who is already lawfully in the United States under a temporary visa to apply for adjustment of status using USCIS

---

[4] A widow may not file the Form I-130 petition on her own behalf *unless* the couple had been married for at least two years at the time of her citizen-husband's death. *See* 8 U.S.C. § 1151(b)(2)(A)(i). This provision is clearly inapplicable to Ms. Lockhart because it is undisputed that she had not been married to Gerald Lockhart for two years when he died.

4

Form I-485.[5] *See* 8 U.S.C. § 1255(a). Ultimately, the Form I-485 application for adjustment of status is a request to become a lawful permanent resident. *See Freeman*, 444 F.3d at 1033. An immigrant visa must be immediately available to an alien in order to qualify for adjustment of status. *Id*. Without an approved Form I-130 petition, an immigrant visa is not immediately available and the USCIS cannot adjudicate the Form I-485 application. If the Form I-130 petition is approved and the Form I-485 application for adjustment of status is granted, then the alien is afforded permanent residence status. *Id*.

Clearly, this procedure makes permanent status contingent upon approval of the Form I-130 petition for an immigrant visa.

## II. PROCEDURAL BACKGROUND AND RELIEF REQUESTED

On March 20, 2007 Ms. Lockhart filed the present action as a *Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief*, (Doc. 1) ("Complaint"), naming Michael Chertoff (Secretary, Department of Homeland Security), Emilio T. Gonzalez (Director USCIS), and Mark B. Hansen (District Director, USCIS) as defendants. The Complaint was amended on April 3, 2007 (Doc. 3) ("Amended Complaint"). The Amended Complaint requests a determination that, as a matter of law, Ms. Lockhart is an "immediate relative" spouse of a United States citizen for purposes of the adjudication of the Form I-130 petition filed on her behalf and the Form I-485 application for Adjustment of Status that she filed. (Doc. 1.) Specifically, Ms. Lockhart requests:

> injunctive, declaratory, and mandamus relief to compel Respondents and their subordinates to: (a) find that, as a matter of clear statutory interpretation, Petitioner remains an "immediate relative" under INA § 201(b)(2)(A)(i) [*i.e.*, 8 U.S.C. §

---

[5] It appears that, as here, alien-spouses sometimes file the Form I-485 application at the same time their citizen-spouse files the Form I-130 petition to expedite the process. *See*, *e.g.*, *Freeman*, 444 F.3d at 1033. As soon as the Form I-130 petition is approved, the USCIS may process the Form I-485 application.

5

> 1151(b)(2)(A)(i)] due to her marriage to a United States citizen; (b) reopen and re-adjudicate the Immigrant Petition (Form I-130 petition) that was filed on behalf of Petitioner by her U.S. citizen husband; and (c) reopen and re-adjudicate the Adjustment of Status application (Form I-485 application) that Petitioner filed as an immediate relative of a U.S. citizen.

(Doc. 3 at 2.) She also requests an injunction prohibiting the Government from using her husband's death or the denial of the Form I-130 petition and Form I-485 application as discretionary factors in the reconsideration of the same petition and application.

On October 31, 2007 the Government filed its *Motion to Dismiss Petition for Mandamus Relief* (Doc. 13). The Government argues that Ms. Lockhart's Amended Complaint should be dismissed for lack of jurisdiction and because, in light of Gerald Lockhart's death, the statute, 8 U.S.C. § 1151(b)(2)(A)(i), requires the USCIS to deny the Form I-130 petition filed on Ms. Lockhart's behalf. (Doc. 13-2 at 6.)

Ms. Lockhart filed *Petitioner's Cross-Motion for Summary Judgment* (Doc. 15) on September 25, 2007. In support of her motion for summary judgment, and in opposition to the Government's motion to dismiss, Ms. Lockhart argues that the Court has jurisdiction and that 8 U.S.C. § 1151(b)(2)(A)(i) requires her to be treated as an "immediate relative." (Doc. 15-2.)

## II. STANDARD FOR A MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

The Government's has filed a motion to dismiss Ms. Lockhart's petition under Fed. R. Civ. P. 12(b)(6) and Ms. Lockhart has filed a cross-motion for summary judgment under Fed. R. Civ. P. 56.

### A. THE STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the

6

plaintiff. *Summit Health, Ltd. v. Pinhas*, 111 S.Ct. 1842, 1845 (1991); *Dana Corp. v. Blue Cross & Blue Shield Mut.*, 900 F.2d 882 (6th Cir. 1990); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### B. THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing summary judgment motions, this Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

### C. THE ISSUE BEFORE THE COURT IS PURELY A MATTER OF LAW

In this case, the material facts are not in dispute. Therefore, the same standard of review applies to both the motion to dismiss and the motion for summary judgment. The issue is whether the USCIS erred in interpreting the relevant statute (8 U.S.C. § 1151(b)(2)(A)(i)) as excluding Ms.

7

Lockhart from the definition of "immediate relative" solely because her husband died after filing the Form I-130 petition but before the USCIS had adjudicated that petition. This is purely an issue of law because the parties do not dispute the only facts relevant to its resolution. Specifically, the parties do not dispute: (1) that the USCIS denied the Form I–130 petition solely on the grounds that Gerald Lockhart's death deprived Ms. Lockhart of "immediate relative" status; (2) the chronology of relevant events, *i.e.*, the marriage, the filing of the Form I-130 petition and Form I-485 application, the preliminary processing of the application, and Gerald Lockhart's death; or (3) the denial of "immediate relative" status. (*See* Doc. 13-2 at 5.) Therefore, the issue at bar – the meaning of 8 U.S.C. § 1151(b)(2)(A)(i) -- may be resolved as a matter of law without reference to disputed facts.[6]

### III. DISCUSSION

#### A. JURISDICTION & STANDING

Ms. Lockhart alleges in her Amended Complaint that this Court has federal question jurisdiction over this action because it arises under the federal Immigration and Nationality Act of 1952. (Doc. 3 at 2.) She also alleges that the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*,

---

[6] The issue before the Court is **not** whether the Form I-130 petition or Form I-485 application should have been, or should be, granted. The adjudication of these Forms is committed to the USCIS and is not within the jurisdiction of this Court. *Freeman*, 444 F.3d at 1043. The narrow scope of the issue before the Court is noteworthy because the Government has attached numerous documents from Ms. Lockhart's USCIS file as an exhibit to its motion to dismiss, and suggests that these documents raise a question with respect to the validity of Ms. Lockhart's marriage. (Doc. 13-2 at 8-9.) The Government is careful to say that the documents do not provide a factual basis sufficient to establish that the marriage was invalid, but it argues that questions regarding the validity of the marriage justify the delay in adjudicating the Form I-130 petition. (*Id.*) Whether questions exist regarding the validity of Ms. Lockhart's marriage and the timeliness of the USCIS's adjudication is not relevant to the interpretation of § 1151(b)(2)(A)(i).

8

the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. confer jurisdiction. She alleges jurisdiction over her request for costs and attorneys fees under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412(d), *et seq*.

Turning first to federal question jurisdiction, the meaning of "spouse" and "immediate relative" under 8 U.S.C. § 1151(b)(2)(A)(i) is a purely legal question that does not implicate the discretionary authority of the USCIS. *See Pinho v. Gonzalez*, 432 F.3d 193, 204 (3d Cir. 2004)*; Freeman*, 444 F.3d at 1037 (finding the proper definition of "spouse" under § 1151(b)(2)(A)(i) to be a purely legal question); *see also U.S. v. Brown*, 915 F.2d 219, 223 (6th Cir. 1990) ("district court engages in statutory construction as a matter of law"). "Determination of *eligibility* for adjustment of status–unlike the granting of adjustment itself–is a purely legal question and does not implicate agency discretion." *Pinho*, 432 F.3d at 204; *compare Lacey v. Gonzalez*, 499 F.3d 514, 518-19 (6th Cir. 2007) (holding that Court lacked jurisdiction to review the USCIS decision denying his application for adjustment of status). Federal question jurisdiction is therefore appropriate here because the only issue before the Court is the interpretation of a federal statute.

The Government argues that this Court does not have jurisdiction because Ms. Lockhart is presently in removal proceedings. (Doc. 13-2 at 11.) This argument raises the issue of exhaustion of administrative remedies. First, no mandatory administrative remedies are available to Ms. Lockhart. *See* 8 C.F.R. § 103.3(a)(ii) (stating party *may* appeal certain unfavorable decisions); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006) (citing *Darby v. Cisneros*, 509 U.S. 137, 146-47 (1993)). Although the Government points out that Ms. Lockhart may renew her application for adjustment of status in her removal proceedings, the Executive Office of Immigration Review ("EOIR") does not have jurisdiction over Form I-130 petitions. *See Matter of Sano*, 19 I. & N. Dec.

299, 301, 1985 WL 56053 (BIA 1985); *Taing v. Chertoff*, – F. Supp. 2d –, 2007 WL 4348060 at *3 (D. Mass. Dec. 12 2007). Furthermore, under 8 C.F.R. § 245.2(a)(5)(ii), Ms. Lockhart cannot appeal the denial of her Form I-485 application for adjustment of status. Because Ms. Lockhart's Form I-485 application is entirely dependent on an approved Form I-130 petition, it would be futile for her to renew the application in her removal proceedings before the EOIR. *See Taing*, 2007 WL 4348060 at *3. The opportunity to renew the application in removal proceedings is therefore functionally meaningless and Ms. Lockhart has exhausted her administrative remedies.

The Government argues that the Board of Immigration Appeals' ("BIA") decision in *Sano* strips Ms. Lockhart of standing to challenge the denial of the Form I-130 petition filed by her deceased husband. (Doc. 13-2 at 10.) *Sano* holds that an alien-spouse does not have standing before the BIA to appeal the denial of the Form I-130 petition filed by the citizen-spouse. *Sano*, 19 I. & N. Dec. at 301. First, *Sano* is an agency decision regarding the agency's jurisdiction – it is not binding precedent with respect to this Court's jurisdiction. Second, the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, broadens standing to all parties "adversely affected or aggrieved" by a final agency action. *See Bangura*, 434 F.3d at 498-99. The APA defines "adversely affected or aggrieved" under the "zone of interest" test. *Id*. at 499 (citing *Nat'l Credit Union Admin. v. First Nat'l Bank*, 522 U.S. 479, 487-90 (1988). Under the zone of interest test, Ms. Lockhart must show that the interest she seeks to protect is within the zone of interests to be protected by the statute at issue. *Id*. "The test is not meant to be especially demanding; in particular, there need be no indication of a congressional purpose to benefit the would-be plaintiff." *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 400 (1987). In *Bangura*, the Sixth Circuit held that an alien spouse has standing to challenge the denial of the Form I-130 petition filed by the alien's citizen-spouse.

10

*Bangura*, 434 F.3d at 499-500. The court held that an alien in Ms. Lockhart's position is within the zone of interest because Congress intended to allow spouses of citizens to live in the United States with their families. *Id.* at 500.

Lastly, factually and procedurally analogous cases have consistently found that the district court has jurisdiction over the issue at bar. *See Freeman*, 444 F.3d at 1037; *Taing*, 2007 WL 4348060 at *2-*3; *Robinson*, 2007 WL 1412284 at *1. In sum, this Court has jurisdiction to determine, as a matter of law, the meaning of "spouse" and "immediate relative" status under 8 U.S.C. § 1151(b)(2)(A)(i).

### B. ANALYSIS

#### 1. The Split of Authority Regarding "Immediate Relative" Status

There is a split of authority with respect to the definition of "spouse" and "immediate relative" status under 8 U.S.C. § 1151(b)(2)(A)(i). The issue is whether the statute permits the USCIS to deny a Form I-130 petition solely on the grounds that the U.S. citizen who properly filed the petition on behalf of his or her alien-spouse died before the petition was adjudicated and within two years of the couple's marriage. The Sixth Circuit has not addressed this issue.

The Ninth Circuit has held that § 1151(b)(2)(A)(i) requires the USCIS to treat an alien in Ms. Lockhart's factual position as an "immediate relative" for purposes of adjudicating a Form I-130 petition. *Freeman v. Gonzalez*, 444 F.3d 1031 (9th Cir. 2006). The United States District Courts for the District of New Jersey and the District of Massachusetts have expressly adopted the Ninth Circuit's interpretation of § 1151(b)(2)(A)(i) as articulated in *Freeman*. *Robinson v. Chertoff*, No. 06-5702 (SRC), 2007 WL 1412284, at *4 (D. N.J. May 14 2007) ("[T]he Court is convinced that the Ninth Circuit's interpretation of the statute is correct."); *Taing*, 2007 WL 4348060 at *10 ("This

11

Court agrees with the Ninth Circuit's interpretation of [§ 1151(b)(2)(A)(i)]. Mrs. Taing remains an immediate relative and ought therefore to have her Applications adjudicated as such.")

Two courts have adopted the opposite interpretation. *See Turek v. Dept. of Homeland Security*, 450 F.Supp.2d 736 (E.D. Mich. 2006); *Burger v. McElroy*, No. 97 CIV. 8775(RPP), 1999 WL 203353 (S.D.N.Y. Apr. 12 1999). The courts in *Turek* and *Burger* held that an alien in Ms. Lockhart's factual position is not an "immediate relative" under § 1151(b)(2)(A)(i), and upheld the USCIS' denial of a Form I-130 petition filed on behalf of a surviving alien-spouse. *Id*.

### 2. The *Freeman* Approach: Ms. Lockhart is an "Immediate Relative"

The facts in *Freeman* are closely analogous to the facts at bar. *Freeman*, 444 F.3d at 1032-33. Mrs. Freeman was a dual citizen of South Africa and Italy who was living in Chicago, Illinois when she met and married Mr. Freeman, a U.S. citizen in February, 2001. In September, 2001, Mr. Freeman filed a Form I-130 petition on his wife's behalf. *Id.* at 1033. Mrs. Freeman filed a Form I-485 application to adjust status on the same day. Just prior to the couple's first wedding anniversary, Mr. Freeman was killed in a car accident. At the time of his death, the Form I-130 petition and the Form I-485 application were pending. *Id.* In May, 2004 the USCIS denied both filings. The USCIS stated that Mrs. Freeman was not qualified for an adjustment of status because she was no longer a "spouse" for purposes of the INA upon the death of her husband. *Id*.

The Ninth Circuit identified the issue as "the proper definition of 'spouse' for purposes of adjustment of status under the immigration laws." *Id.* The Court held as follows:

> **[A]n alien widow whose citizen spouse filed the necessary immediate relative petition form but died within two years of the qualifying marriage nonetheless remains a spouse for purposes of 8 U.S.C. § 1151(b)(2)(A)(i), and is entitled to be treated as such when [the USCIS] adjudicates her adjustment of status application.**

12

*Id*. at 1034 (emphasis added).

As an initial matter, the Ninth Circuit addressed whether the Court owed deference to the agency's interpretation of 8 U.S.C. § 1151(b)(2)(A)(i) under *Chevron v. NRDC*, 467 U.S. 837, 842 (1984). *Id*. at 1038. Under *Chevron*, deference to an administrative agency's interpretation of a statute is due if (1) the intent of Congress is not clear based on a plain reading of the statute and, (2) when the statute is ambiguous, if the agency's interpretation "is based on a permissible construction of the statute." *Id*. (citing *Chevron*).

The agency interpretation of 8 U.S.C. § 1151(b)(2)(A)(i) is set forth in *In re Varela*, 13 I. & N. Dec. 453, 454 (BIA 1970). In *In re Varela*, the Board of Immigration Appeals held that an alien spouse in Ms. Lockhart's position was no longer a "spouse" under 8 U.S.C. § 1151(b)(2)(A)(i) because of the death of her citizen-husband prior to the adjudication of her adjustment of status application. *Id*.

The Ninth Circuit concluded that neither prong of the *Chevron* test was satisfied. *Freeman*, 444 F.3d at 1038-39. It found that *Chevron* deference to *In re Varela* was not required because (1) the intent of Congress with respect to the issue at bar is clear based on the plain language of the statute, and (2) the agency's interpretation is not a "permissible construction of the statute." *Id.* The Ninth Circuit thus turned its attention to interpreting 8 U.S.C. § 1151(b)(2)(A)(i).

In interpreting the "immediate relative" provision of the INA, 8 U.S.C. § 1151(b)(2)(A)(i), the Ninth Circuit reasoned that the relationship between the two sentences of the provision clearly supported only the meaning reflected in the holding, *i.e.*, that a widow like Ms. Lockhart is an "immediate relative." *Id*. at 1037. The first sentence expressly states that the "spouse" of a U.S. citizen is an "immediate relative." *Id.*

> For purposes of this subsection, the term "immediate relatives" means the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age.

8 U.S.C. § 1151(b)(2)(A)(i). The *Freeman* court noted that the only qualifier with respect to time in the statute relates to parents, not spouses. *Freeman*, 444 F.3d at 1039. Accordingly, an alien-widow is not stripped of her status as a "spouse" under this sentence simply by virtue of the death of her citizen-husband. *Id*. Instead, the court characterized Mrs. Freeman as a "*surviving* spouse." *Id.* at 1040.

Turning to the second sentence of § 1151(b)(2)(A)(i), the Ninth Circuit rejected the Government's contention that the statute includes a two year marriage requirement in cases where the citizen-spouse dies before the Government adjudicates a properly filed Form I-130 petition. *Id*. at 1041. The Court based its conclusion on the plain language of that sentence of the statute, which provides:

> In the case of an alien who was the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien (and each child of the alien) shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 1154(a)(1)(A)(ii) of this title within 2 years after such date and only until the date the spouse remarries.

8 U.S.C. § 1151(b)(2)(A)(i).

According to the Ninth Circuit, the sole purpose of this sentence of the statute is to permit a surviving spouse to file a Form I-130 petition on his or her own behalf if the couple had been married for at least two years at the time of the citizen-spouse's death. *Freeman*, 444 F.3d at 1041. In other words, this sentence *grants* a right to a certain class of surviving spouses; it does not modify the definition of "spouse" in the first sentence of 8 U.S.C. § 1151(b)(2)(A)(i). The Ninth Circuit

14

concluded that the second sentence of the statute simply does not address whether and when a *surviving* spouse is entitled to be treated as an "immediate relative." *Id*.

The Ninth Circuit also noted that the regulations, 8 C.F.R. §§ 204.1-2, support its interpretation of the statute.

> The distinction the regulations draw between the rights of a citizen spouse to petition as compared to those of an alien widow to *self-petition* is consistent with a congressional intent to create two different processes, such that one or the other applies-either the citizen spouse petitions or, if he dies without doing so, the alien widow may do so. There is no provision that the citizen spouse's pending petition (and consequently the alien spouse's immediate relative status) is voided on his death, requiring the widow to start over with her own self-petition.

*Id.* at 1042 (emphasis in original). The "text, structure, and context" of the statute simply do not make "immediate relative" status under the "spouse" term contingent upon a two year marriage. *Id*. at 1043.

The District Court of Massachusetts recently adopted the *Freeman* approach in *Taing*, 2007 WL 434060 (D. Mass. Dec. 12 2007). *Taing* is factually and procedurally analogous to *Freeman* and the case at bar. *Id.* at *1-*2. The petitioner, Ms. Taing, filed a petition for a writ of mandamus and complaint for declaratory and injunctive relief, and the Government filed a motion to dismiss. *Id*.. Mrs. Taing, an alien, married a U.S. citizen who properly filed a Form I-130 petition on her behalf shortly after their marriage. *Id.* at 2. Mrs. Taing properly filed a Form I-485 application for adjustment of status. *Id.* With both Forms pending and well before the couple had been married for two years, Mr. Taing died. *Id.* Mrs. Taing then appeared alone at an interview scheduled regarding the petition and application. *Id.* Subsequently, the Government denied the petition and application. *Id.*

In an opinion closely following the Ninth Circuit's reasoning in *Freeman*, the Court held that

15

a surviving spouse remains a "spouse" under 8 U.S.C. § 1151(b)(2)(A)(i) and is entitled to "immediate relative" status for purposes of the adjudication of her Form I-130 petition and Form I-485 application. *Id.* at *10. First, the Court held that *Chevron* deference to the USCIS's interpretation of the statute in *In re Varela* was not due. *Id.* at 6. Second, the Court rejected the Government's "terminological" argument that a person whose husband or wife has died cannot be a "spouse." *Id.* at *7. A "surviving spouse" remains a "spouse" for purposes of the statute.[7] *Id*. Third, the Court discussed and adopted the *Freeman* interpretation of 8 U.S.C. § 1151(b)(2)(A)(i). *Id.* at *7-*9. In addition, the District Court of Massachusetts noted that the District Court of New Jersey also followed *Freeman* in *Robinson*, 2007 WL 1412284. *Id*. at *9.

> The court in *Robinson* persuasively noted that: [the interpretation proffered by the government] yields strange results. A prompt adjudication of the I-130 petition (before the citizen dies) will result in approval. A delay in adjudication (until after the citizen dies) will result in a denial. But a severe delay of two years, followed by the citizen's death, will also result in approval. The Court cannot imagine that Congress intended the time of death combined with the pace of administration, rather than the petitioner's conscious decision to promptly file an I-130 petition, to be the proper basis for determining whether the alien qualifies as an immediate relative.

*Id.* at *9 (quoting *Robinson*, 2007 WL 1412284 at *5).

Like *Taing*, *Robinson* is procedurally and factually analogous to *Freeman* and the case at bar. *Robinson*, 2007 WL 1412284 at *1. Mrs. Robinson, an alien, filed a complaint seeking an order to re-open her Form I-130 petition and Form I-485 application, to require the USCIS to treat her as an

---

[7]   The Government, both here and in *Taing*, makes this "terminological" argument based largely on Black's Law Dictionary. *See Taing*, 2007 WL 4348060 at *6-*7. Black's defines "spouse" as "one's husband or wife," and defines "wife" as "a woman who has a lawful husband living." *Id.* at *6. The Government argues that, therefore, a widow is not a spouse by definition. *Id*. As the court notes in *Taing*, however, the Government's argument ignores the fact that "surviving spouse" is also a defined term which includes widows and widowers within the definition of "spouse." *Id.* at *7.

16

"immediate relative" in adjudicating the re-opened Forms, and to enjoin the USCIS from using her citizen-husband's death as a discretionary factor in adjudicating the Form I-485 application. *Id*. The Government filed a motion to dismiss and Mrs. Robinson filed a cross-motion for summary judgment. *Id.* After analyzing the *Freeman* opinion in some detail, the District Court of New Jersey expressly adopted the Ninth Circuit's interpretation of 8 U.S.C. § 1151(b)(2)(A)(i). *Id*. at *4.

### 3. The *Turek* Approach: Ms. Lockhart is not an "Immediate Relative"

The Government cites *Turek*, 450 F.Supp.2d 736 in support of its argument that the agency's interpretation of the statute in *In re Varela* should prevail and deprive Ms. Lockhart of "immediate relative" status. In *Turek*, the Eastern District of Michigan expressly disagreed with the Ninth Circuit's interpretation of § 1151(b)(2)(A)(i). *Id.* at 740. First, with very little analysis, the Court held that the USCIS's interpretation of the statute in *In re Varela* controls. "The statute makes clear that "immediate relative" status is reserved for an alien who is the spouse of a citizen of the United States 'for at least 2 years at the time of the citizen's death' . . . ". *Id*. (quoting 8 U.S.C. § 1151(b)(2)(A)(i)). Next, the court distinguished *Freeman* in holding that "immediate relative" status was inappropriate in light of the fact that the alien-spouse in *Turek* was in removal proceedings at the time of the marriage. *Id*. This fact raises a legal presumption that the marriage was not entered into in good faith, and the alien must rebut the presumption to qualify for "immediate relative" status. *Id*.

Similarly, the Government cites *Burger*, 1999 WL 203353 (S.D.N.Y. 1999). *Burger* is factually and procedurally analogous to the case at bar. *Id.* at *1-*2. Mrs. Burger, an alien, married Mr. Burger, a U.S. citizen. Shortly after their marriage, Mr. Burger filed a Form I-130 petition on his wife's behalf, and Mrs. Burger filed a Form I-485 application. While the petition and application

17

were pending, and prior to their two-year anniversary, Mr. Burger died. The USCIS then denied the petition and application, stating that "[t]here are no provision for the approval of a petition for a widow where the marriage endured for less than two years." *Id*. at *2. Mrs. Burger, the alien-spouse, filed a lawsuit challenging the USCIS's decision. In its analysis, the District Court for the Southern District of New York deferred to the agency interpretation of the statute, which "require[s] that the immediate family relation exist at the time the petition is *adjudicated*." 1999 WL 203353 at *5 (citing *In re Varela*, 13 I. & N. Dec. 453, 454 (B.I.A. 1970). In so holding, the *Burger* court concluded that *Chevron*, 467 U.S. 837, applies and requires the court to defer to the USCIS's interpretation as set forth in *In re Varela*.

### 4. The Ninth Circuit Approach is Correct; Ms. Lockhart Is Entitled to "Immediate Relative" Status

The Government's reading of 8 U.S.C. § 1151(b)(2)(A)(i) is unfounded. As the well-reasoned opinions of the Ninth Circuit (*Freeman*), Massachusetts District Court (*Taing*) and New Jersey District Court (*Robinson*) conclude, the plain language of the statute simply does not impose a two year requirement on "immediate relative" status for a surviving alien-spouse. This Court holds that an alien-spouse whose citizen-spouse dies after properly filing a Form I-130 petition on behalf of the alien-spouse is entitled to "immediate relative" status under 8 U.S.C. § 1151(b)(2)(A)(i).

The cases on which the Government relies – *Turek*, 450 F.Supp.2d 736 and *Burger*, 1999 WL 203353 – are not binding precedent on this Court. Furthermore, in light of the plain language and grammatical structure of the statute, *Turek* and *Burger* improperly apply *Chevron* deference. *See Turek*, 450 F.Supp.2d at 740; *Burger*, 1999 WL 203353 at *5; *see also Freeman*, 444 F.3d at 1038. *Turek* and *Burger* thus grossly over-emphasize the precedential value of *In re Varela*, 13 I. & N. Dec. 453, the agency opinion interpreting § 1151(b)(2)(A)(i). In addition, *Turek* is factually

18

distinguishable given that the marriage at issue in *Turek* was subject to an automatic presumption of invalidity because, unlike Ms. Lockhart's marriage, it was entered into while the alien-spouse was in removal proceedings.

The Government argues that the validity of Ms. Lockhart's marriage has not been established, and that denial of the Form I-130 petition is therefore appropriate because the death of the citizen-spouse renders it impossible to determine the validity of the marriage. As discussed above, however, this argument is not supported by the plain language of the statute. *See, e.g.*, *Freeman*, 444 F.3d at 1039. In addition, it is undisputed that, prior to his death, the USCIS interviewed Gerald Lockhart and thus had an opportunity to question him regarding the validity of his marriage to Ms. Lockhart. (Doc. 13-2 at 4.)

With this in mind, it is important to note that the *Freeman* interpretation of the statute does not *require* the USCIS to grant Ms. Lockhart's Form I-130 petition. The USCIS may, in its discretion, ultimately deny the Form I-130 petition if it determines that the Lockharts' marriage was a sham. *See Lutwak v. United States*, 344 U.S. 604 (1953). As the court stated in *Taing*: "At issue is not whether the Government has discretion to deny an Application (it does) but whether the interpretation upon which the Government bases its decision is appropriate . . . ." *Taing*, 2007 WL 4348060 at *10. While it is the duty of this Court to determine the meaning of 8 U.S.C. § 1151(b)(2)(A)(i), it is the duty of the USCIS to apply that meaning to Ms. Lockhart's petition and application.

Lastly, Ms. Lockhart's request for costs and fees pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412(d) is **DENIED**. Such costs and fees may be awarded to the prevailing party in proceedings for judicial review of agency action, 28 U.S.C. § 2412(d), unless the Court finds that the

19

Government's position was substantially justified. Although erroneous, the Government's denial of the Form I-130 petition in this case was substantially justified in light of the split of authority discussed above regarding the meaning of 8 U.S.C. § 1151(b)(2)(A)(i).

The USCIS erred in denying Ms. Lockhart's Form I-130 petition and Form I-485 application solely because her citizen-husband died while the petition and application were pending and within two years of the couple's marriage.

## IV. CONCLUSION

Accordingly, the Government's *Motion to Dismiss Petition for Mandamus Relief* (Doc. 13) is **DENIED**, and Ms. Lockhart's *Cross-Motion for Summary Judgment* (Doc. 15) is **GRANTED**. This case is hereby **REMANDED** to the USCIS for re-adjudication consistent with this opinion. Specifically, Ms. Lockhart's Form I-130 petition and Form I-485 application are hereby re-opened for re-adjudication. In re-adjudicating Ms. Lockhart's Form I-130 petition, the USCIS shall treat Ms. Lockhart as an "immediate relative." Factors flowing from the initial improper denial of the petition and application (e.g., issues of timeliness, the pendency of removal proceedings, etc.) shall not be used to the prejudice of Ms. Lockhart upon re-adjudication.

**IT IS SO ORDERED.**

                                              s/Kathleen M. O'Malley
                                              **KATHLEEN McDONALD O'MALLEY**
                                              **UNITED STATES DISTRICT JUDGE**

**Dated: January 7, 2008**